**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ATNY Yanbu LLC

Plaintiff,

v.

Gulf Transport & Trading, Ltd.

Defendant,

and

Shell USA, Inc.
Shell Trading (US) Company
Trafigura Trading LLC
Glencore Ltd.

Garnishees.

Civil Action No.: 1:26-cv-00950-CFC

IN ADMIRALTY

**FIRST AMENDED VERIFIED COMPLAINT WITH REQUEST FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**

Plaintiff ATNY Yanbu LLC ("Owner") brings this first amended verified complaint against Gulf Transport & Trading, Ltd. ("GTT"), *quasi in rem*, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and seeking the issuance of process of maritime attachment and garnishment to Garnishees. Owner states as follows:

**Jurisdiction and Venue**

1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h). Owner further brings this action pursuant to 9 U.S.C. §§ 1 and 8 to obtain security in aid of London arbitration commenced or to be commenced by Owner against GTT pursuant to the parties' maritime charter party.

2. Venue is proper in this District because each Garnishee is a Delaware LLC or corporation and so is found within this District and is in possession of, or reasonably believed to possess, property of GTT subject to maritime attachment.

3. Defendant GTT cannot be found in this District within the meaning of Rule B. Specifically, GTT has no offices, agents, employees, officers, owners, managers, or other affiliates which are Delaware residents, or which have any of their principal offices in Delaware.

**Parties and Garnishees**

4. Plaintiff ATNY Yanbu, LLC ("Owner") at the time of the events which are the subject of this Verified Complaint owned the M/T UOG KORTHI (IMO No. 9458808) (the "Vessel"), which carried a cargo of unleaded gasoline for GTT during the voyage described herein.

5. Defendant Gulf Transport & Trading, Ltd. ("GTT") is and was at the time of the events which are the subject of this Verified Complaint in the business of, *inter alia*, chartering vessels for ocean transportation of petroleum products.

6. GTT is organized and exists under the laws of the United Arab Emirates, with its principal place of business in Dubai, United Arab Emirates.

7. Upon information and belief, the Garnishees, as described below, have done business with GTT and presently possess or control property of GTT, including accounts payable to, or other credits of, GTT, or other contractual rights, accounts, or other tangible or intangible property subject to maritime attachment under Supplemental Rule B.

**Facts**

8. Owner chartered the Vessel to GTT under the terms of a voyage charter party set by a fixture agreement dated September 30, 2025 (the "Charter Party"). As allowed therein,

GTT ordered the Vessel to load unleaded gasoline at the port of Amsterdam, The Netherlands, for discharge at Tema, Ghana.

9. The Charter Party gave an allowance of laytime, and established a demurrage rate for all time in excess of that laytime. It further provided for London arbitration of disputes and the application of English law.

10. The Charter Party's General West Africa Clause provided that delay in berthing, loading, discharging, or sailing caused by restraints or by any further cause beyond the control of Owner, the Vessel's master, or the Vessel's crew would count as laytime or, if the Vessel was already on demurrage, as demurrage.

11. The Vessel sailed laden with unleaded gasoline from Amsterdam on October 12, 2025. She arrived at Tema, Ghana on October 25, 2025 to discharge cargo. The Vessel discharged some cargo at Tema before going to anchorage to await further discharge. GTT exhausted its allowed laytime and went on demurrage, for which it began making payments.

12. On January 3, 2026, while still at anchor, the Vessel was served with an arrest application that had been brought by non-party Magnific Orse SARL ("Magnific") to the High Court of Justice at Tema, Ghana. Once that happened, Ghanaian authorities disallowed either the Vessel's departure or any further discharge of cargo.

13. That proceeding, against non-party EKO-Trans 23 LLP and the Vessel, was fraudulent and based on fabricated evidence. Magnific alleged that the Vessel had loaded diesel oil at Ijmuiden, Netherlands, whereas it had loaded unleaded gasoline at Amesterdam. Its evidence further used the wrong name of the Vessel's master, and used a false official stamp for the Vessel. Neither Owner nor Vessel had any contractual relationship with Magnific or any involvement in the transaction alleged in Magnific's proceedings.

14. GTT terminated demurrage payments as of January 3, 2026.

15. Responding to the arrest proceedings, Owner promptly retained Ghanaian counsel and appeared in court there. Owner filed a notice of appearance on or about January 5, 2026, and an affidavit opposing Magnific's arrest application on or about January 8, 2026.

16. Following unsuccessful efforts to obtain permission to resume cargo operations, on January 21, 2026, Owner submitted a formal application to the Ghanaian court seeking leave to discharge the remaining cargo.

17. But on January 23, 2026, GTT unilaterally filed a Joinder Notice in the Ghanaian court. This delayed the progress of the Ghana proceedings in that the Court adjourned proceedings until Charterers achieved proper service of their Joinder effort. This delayed obtaining a lift of the court's restraint on the Vessel's continued cargo discharge.

18. On January 29, 2026, the court entered an order permitting the Vessel to discharge the cargo remaining aboard. But GTT did not resume discharge at that time.

19. On February 4, 2026, after Owner posted security, the court entered a further order releasing the Vessel. Charterers failed to effect discharge until February 23, 2026.

20. On March 5, 2026, Owner submitted its final adjusted demurrage claim of USD 1,735,271.82.

21. GTT has not paid this demurrage claim, which remains due and owing under the Charter Party, together with interest, costs, and any further relief recoverable in the parties' underlying English proceedings.

**Specific Allegations – Garnishees**

22. Garnishee Shell USA, Inc. ("Shell USA"), upon information and belief, engages in the business of purchasing, selling, refining, transporting, storing, and marketing crude oil, refined petroleum products, and related petroleum commodities, and conducts business with GTT in connection with such activities.

23. Garnishee Shell Trading (US) Co. ("Shell Trading"), upon information and belief, engages in the business of purchasing, selling, trading, transporting, and marketing crude oil, refined petroleum products, and related petroleum commodities, and conducts business with GTT in connection with such activities.

24. Garnishee Trafigura Trading LLC ("Trafigura"), upon information and belief, engages in the business of purchasing, selling, trading, transporting, and marketing crude oil, refined petroleum products, and related petroleum commodities, and conducts business with GTT in connection with such activities.

25. Garnishee Glencore Ltd. ("Glencore"), upon information and belief, engages in the business of purchasing, selling, trading, transporting, and marketing crude oil, refined petroleum products, and related petroleum commodities, and conducts business with GTT on an ongoing basis in connection with such activities.

26. Owner therefore reasonably believes that each Garnishee conducts business with GTT and is or may be indebted to GTT or possess, control, or hold property of GTT subject to maritime attachment pursuant to Supplemental Rule B.

**Count I – Breach of Maritime Contract**

27. Owner repeats and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

28. The Charter Party is a maritime contract which Owner fully performed.

29. GTT breached the Charter Party by failing to pay demurrage and other amounts due to Owner thereunder. For damages sustained from GTT's breach, which are the subject of London arbitration, Owner seeks security by way of funds and other property held by Garnishees as demanded below.

**Count II – Process of Maritime Attachment and Garnishment (Supplemental Rule B)**

30. Owner repeats and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

31. Owner is entitled to the issuance of process of maritime attachment and garnishment to obtain security for its claims in arbitration and related claims.

32. GTT cannot be found within this District within the meaning of Rule B, but on information and belief has, or will have during the pendency of this action, tangible and/or intangible property within this District consisting of debts, credits, funds, accounts, electronic funds, and/or other property, owed or held for GTT and in the hands of one or more garnishees in this District, including the Garnishees identified in this Complaint.

33. Owner therefore respectfully requests the Court to issue a writ of maritime garnishment pursuant to Supplemental Rule B as set out below.

**Prayer for Relief**

WHEREFORE, Owner prays:

A. That as GTT cannot be found within this District, and pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment to garnish and attach property of GTT including, but not limited to, accounts payable or to be owed from Garnishees to GTT, in the amount of at least US **$2,435,272**, which includes the principal demurrage claim of US $1,735,271.82, plus estimated legal and arbitrators charges, plus estimated interest until the award amount is paid (herein, collectively, the "Security Amount");

B. That Process provides for the attaching of all tangible or intangible property of GTT held by any Garnishee, up to the Security Amount;

C. That upon that total amount being garnished and attached, this Court recognize the final award in the London arbitration and order that judgment thereafter be paid from the Security Amount;

D. That any persons claiming any interest in the property attached by such Process be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in this Verified Complaint;

E. That a person over 18 years of age be appointed as moved for herein, pursuant to Supplemental Rule B and Fed. R. Civ. P. 4(c), to serve Process of Maritime Attachment and Garnishment;

F. That this Court award Owner such other and further relief that this Court deems just and proper.

YOUNG CONAWAY STARGATT
& TAYLOR LLP

*/s/ Timothy Jay Houseal*
Timothy Jay Houseal (Del. Bar ID No. 2880)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6682
thouseal@ycst.com

OF COUNSEL:
Admitted *Pro Hac Vice*:

J. Stephen Simms
Thomas M. Brown
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, MD 21030
(410) 783-5795
jssimms@simmsshowers.com
tmbrown@simmsshowers.com

*Attorneys for ATNY Yanbu LLC.*

Dated: September 30, 2026

60567665.1

**VERIFICATION**

I am a Principal at the law firm Simms Showers LLP, and of counsel to Owner. The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Owner and other information available to me. Owner's authorized officers are not readily available in this District to make verifications on Owner's behalf. I am authorized to make this verification on Owner's behalf. I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers of Defendants in this District. There is no record of any general or resident agent authorized to accept service of process for Defendant in this District.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2026.

*/s/ J. Stephen Simms*

J. Stephen Simms (*pro hac vice*)
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Tel: 410-783-5795